FILED

2025 Dec-16  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **MARCUS MYLES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.:** |
| ) | |
| **AFTERMATH SERVICES** ) | **JURY DEMANDED** |
| **LLC,** ) | |
| ) | |
| **Defendant.** ) | |

---

## COMPLAINT

---

Marcus Myles (hereinafter "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendant Aftermath Services LLC (hereinafter "Defendant") and seeks redress for discrimination suffered in Plaintiff's capacity as an employee of Defendant. Plaintiff has been discriminated against by Defendant on account of Plaintiff's race in violation of Title VII of the Civil Rights Act of 1964 § 2000e *et seq*., and any other causes of action that can be inferred from the facts set forth herein. In support of his Complaint, Plaintiff states as follows:

### PARTIES

1.      Plaintiff is a resident of Jefferson County, Alabama and is over the age of nineteen (19) years.

2.      Plaintiff, for all times relevant to this action, was an "employee" of Defendant as defined under Title VII of the Civil Rights Act of 1964.

3.      Defendant is a foreign corporation incorporated under the laws of Delaware, with its principal place of business being in the State of Illinois. Defendant's registered agent is COGENCY GLOBAL INC, which can be served process at 2 North Jackson Street Suite 605 Montgomery, Alabama 36104.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this arises under the laws of the United States, 42 U.S.C. § 12117(a) because the action arises under Title VII of the Civil Rights Act of 1964 § 2000e *et seq*.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful acts took place within Jefferson County, Alabama, which lies within the Southern Division of the United States District Court for the Northern District of Alabama.

## COMPLIANCE WITH JURISDICTIONAL REQUIREMENTS

6.      Plaintiff has complied with the jurisdictional requirements on to wit: that on or about March 26, 2024, Plaintiff filed a Charge of Discrimination (hereinafter "1st Charge") in employment with the Equal Employment

Opportunity Commission (hereinafter "EEOC"), and on or about June 12, 2024, Plaintiff filed a second Charge of Discrimination (hereinafter "2nd Charge") in employment with the EEOC.

7.  On September 17, 2025, the EEOC issued Plaintiff two Notification of a Right to Sue, and Plaintiff filed this Complaint within the ninety (90) day deadline. A collective copy of the notifications is attached as "Exhibit A."

## FACTS

8.  Plaintiff is an African American (Black) and a member of a protected class.

9.  On or about November 27, 2023, Plaintiff began his employment with Defendant as a technician.

10. Plaintiff has a good faith basis to believe that he was the only member of his protected class working in his position and team, if not, the only member of the protected class employed by Defendant.

11. Shortly after beginning his employment, Plaintiff was subjected to racial discrimination by his supervisor, Jacob Vetters (Caucasian) ("Vetters").

12. On multiple occasion Vetters would walk up to Plaintiff to make small talk and "get to know [Plaintiff] better".

13. On one occasion, Vetters asked Plaintiff if he was a "gang-banger", if Plaintiff had killed anyone, and that he [Vetters] knew Plaintiff's tattoo

meant that Plaintiff had killed people before because he [Vetters] listened to rap music growing up.

14.     Vetters also told Plaintiff that he [Vetters] used to fly drones over Klu Klux Klan ("KKK") rallies and he [Vetters] wanted to join the KKK.

15.     Vetters also began asking Plaintiff if he was a homosexual, and if Plaintiff knew of anyone Vetters could have sex with.

16.     Approximately one week after Vetters first flurry of racially discriminatory comments, Plaintiff and Vetters were riding together enroute to a job site in the line and scope of their job duties, and Vetters told Plaintiff that he "did not like black people music", turned off the radio, and began speaking to Caucasian individuals about joining the KKK.

17.     Following this second incident, Plaintiff reported Vetters' racially discriminatory conduct to Defendant.

18.     Plaintiff has a good faith basis to believe that Vetters gained knowledge of Plaintiff complaint.

19.     The day after Plaintiff's complaint, Vetters told Plaintiff that Plaintiff should not come to work because Vetters "did not like working with Plaintiff's kind [Black/African-American].

20.     Two day after Plaintiff's complaint, Plaintiff arrived to work; however, Vetters locked Plaintiff out of the building that Plaintiff needed to be in to

perform his job duties, stating that he did not like African-Americans, and accused Plaintiff of hiring someone to try to kill him.

21.    Following this incident, Plaintiff again reported Vetters to Defendant.

22.    Plaintiff has a good faith basis to believe that Vetters learned about Plaintiff's second report.

23.    Following Plaintiff's second report, Vetters, upon information and belief, due to Plaintiff's complaint, resigned from his employment.

24.    Following Vetters resignation, Defendant transferred employees from Georgia to Plaintiff's location.

25.    Plaintiff remained the only individual in his protected class.

26.    Despite Vetters resignation, Plaintiff continued to be subjected to a racially discriminatory comments by co-employees that Defendant transferred into Plaintiff's location.

27.    On or about March 26, 2024, Plaintiff filed the 1st Charge with the EEOC.

28.    After Vetters resigned, Defendant replaced the supervisor position with Elgin Lee Briggs ("Briggs") (Indian).

29.    After Briggs became Plaintiff's employer, Briggs told Plaintiff that he was aware that Plaintiff filed complaints against his former supervisor (Vetters) and threatened Plaintiff if he [Plaintiff] tried to report Briggs he would be fired.

30.     Briggs then went on tell Plaintiff that he [Briggs] was an Indian and that Indians "do not like Black people", that Briggs expected Plaintiff to come to work and not "snitch" or he [Briggs] would have Plaintiff fired.

31.     In addition to Brigg's statements, Plaintiff was also taunted by other co-employees for filing an EEOC charge.

32.     In one instance, a Caucasian employee told Plaintiff that he had "two strikes" against him [Plaintiff]. The first being Plaintiff was a "black man" and the second strike was filing a charge with the EEOC.

33.     Furthermore, following Plaintiff's filing of an EEOC charge, Defendant either did not provide Plaintiff with work, or when it would give Plaintiff work would assign him jobs without support while employees outside of his protected class would sit in the Defendant's vehicle letting Plaintiff perform the entire job.

34.     Plaintiff, in fear of Briggs threat, did not report this activity out of fear of further retaliation.

35.     On or about April 11, 2024, while Plaintiff was with Briggs in a company truck and Briggs began smoking marijuana in the truck.

36.     After Plaintiff objected to the Briggs's actions, Briggs called Plaintiff a "nigger" and again threatened him not to "snitch".

37.     On another occasion, Briggs would make intentionally inciting remarks towards Plaintiff, such as Martin Luther King Jr.  not being shot, but smothered, in an attempt to make Plaintiff mad.

38.     On or about April 18, 2024, Briggs lied to Defendant's area manager, Jeremy Rabuck (Caucasian) stating that Plaintiff did not perform his job duties and started an argument with Plaintiff, who attempted to correct Briggs' lie.

39.     At that time, Plaintiff attempted to report Briggs' behavior to Defendant.

40.     On or about April 18, 2024, Defendant terminated Plaintiff's employment.

## COUNT I:
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000E ET SEQ.
### (RACE BASED HOSTILE WORK ENVIRONMENT)

41.     Plaintiff adopt and re-alleges paragraphs 1 - 40 as if fully set forth herein.

42.     Plaintiff is a African-American (Black) and member of a protected class.

43.     Shortly after Plaintiff began his employment with Defendant, he was subjected to harassment by his Caucasian supervisor, Vetters.

44.     Specifically, Vetters targeted and harassed Plaintiff based on his race by making racially discriminatory statements, stating that he didn't like "black people", treating Plaintiff as if he was a gang member and murder, refusing to work with Plaintiff due to his skin color, and openly discussing

white supremacist groups and his [Vetters] desire to join them in front of Plaintiff.

45.    On multiple occasions, Plaintiff reported Vetters' conduct to Defendant; however, Defendant failed/refused to take prompt and necessary action to remedy Vetters' conduct and prevent future harm.

46.    Following Plaintiff's report, Vetters' harassing and discriminatory conduct continued and elevated until, following Plaintiff's second report, Vetters terminated his own employment in fear of Plaintiff's report.

47.    Despite Vetters' resignation, Plaintiff continued to be subjected to racial discrimination, harassment, and retaliation by his other co-employees and his new supervisor, Briggs.

48.    After becoming Plaintiff's supervisor, Briggs openly stated that he did not like Plaintiff due to his skin color and threatened Plaintiff with termination if he reported Briggs like he had Vetters.

49.    Following this Briggs, and Plaintiff's Caucasian co-employees, began to make racially discriminatory statements such as calling Plaintiff "nigger" and telling Plaintiff that one of his "strikes" was being a black man.

50.    Ultimately, the harassment and discriminatory conduct Plaintiff was subjected to led to his termination on or about April 18, 2024.

51.     The harassing conduct plaintiff was subjected to altered the terms and condition of Plaintiff's employment, subjected Plaintiff to humiliation in front of his co-employees, and at times left Plaintiff in fear for his physical safety.

52.     Defendant, knew or should have known, about the discriminatory conduct because of Plaintiff's previous reports, and because Defendant failed/refused to take prompt and necessary actions regarding the conduct, affirmed said conduct.

53.     Defendant, through its affirmation of the conduct, created a hostile work environment based on Plaintiff's race that was severe and pervasive enough to alter the terms and conditions of Plaintiff's employment.

54.     The above mentioned conduct occurred routinely until the end of Plaintiff's employment.

55.     Plaintiff is unaware of any other employees outside her protected class subjected to similar treatment.

56.     Defendant's discriminatory actions against Plaintiff is in violation of Plaintiff's right under Title VII of the Civil Rights Act of 1964, as amended, were intentional and done with malice and/or reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States.

57.    As a result of Defendant's unlawful conduct, Plaintiff suffered and continues to suffer loss of wages, loss of career opportunities, sever emotional distress, loss of self-esteem, and other damages.

**WHEREFORE**, Plaintiff prays that this Honorable Court will:

A.    Enter a declaratory judgment, declaring Defendant's past practice herein complained to be unlawful;

B.    Order Defendant to institute and carry out policies, practices and programs providing equal employment opportunities for Plaintiff and other employees and eradicating the effects of its past and present unlawful employment practices.

C.    Order Defendant to make Plaintiff whole by providing other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices.

D.    Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, and inconvenience, in amounts to be determined at trial

E.    Award punitive damages to be determined by a jury at trial; and,

F.    Grant such further relief as the Court deems necessary and proper

## COUNT II:
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000E ET SEQ.
### (RETALIATION)

58.    Plaintiff adopts and re-alleges paragraphs 1 - 40 as if fully set forth herein.

59.    Plaintiff engaged in a protected activity on multiple occasions, including but not limited to filing an EEOC charge of discrimination on or about March 26, 2024 and June 12, 2024, regarding racial discrimination and a hostile work environment based on his race.

60.    Plaintiff has a good faith basis to believe that Vetters and Briggs gained knowledge about Plaintiff's reports of discrimination.

61.    After Plaintiff engaged in the protected activities, Plaintiff was subjected to continued discrimination that ultimately resulted in Plaintiff incurring an adverse employment action via his termination in or around April 18, 2024.

62.    The harassment and conduct that Plaintiff was subjected to would dissuade a reasonable person from engaging in future protected conducted and caused Plaintiff to suffer adverse employment actions, including termination.

63.    Defendant knew or should have known about the retaliatory conduct and failed/refused to take the prompt and necessary action to remedy the conduct and protect against future harm and therefore affirmed it.

64.    As a result, the retaliatory conduct and Defendant's affirmation of the same, Plaintiff was caused to suffer and continue to suffer loss of wages, loss of career opportunities, sever emotional distress, loss of self-esteem, and other damages.

**WHEREFORE**, Plaintiff prays that this Honorable Court will:

A.    Enter a declaratory judgment, declaring Defendant's past practice herein complained to be unlawful;

B.    Order Defendant to institute and carry out policies, practices and programs providing equal employment opportunities for Plaintiff and other employees and eradicating the effects of its past and present unlawful employment practices.

C.    Order Defendant to make Plaintiff whole by providing other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices.

D.    Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, and inconvenience, in amounts to be determined at trial

E.    Award punitive damages to be determined by a jury at trial; and,

F.      Grant such further relief as the Court deems necessary and proper

WHEREFORE, Plaintiff demands judgment against Defendant for such

damages as a jury may determine to be appropriate and for the costs of this action.

## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES OF THE
COMPLAINT.


*/s/ Jon-Kaden Mullen*
D. Jeremy Schatz
Jon-Kaden Mullen
*Attorneys for Plaintiff*

**OF COUNSEL:**
Virtus Law Group
2017 Morris Avenue, Ste 100
Birmingham, AL 35203
js@vlgal.com
jm@vlgal.com

**Please Serve Defendants By Certified Mail As Follows:**

**Aftermath Services LLC**
**c/o Cogency Global Inc**
**2 North Jackson Street Ste 605**
**Montgomery, AL 36104**